**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Xiao Ye Bai, | Case No. 2:24-cv-01113-JAD-NJK |
|      Petitioner | **Order Denying Petition for Habeas Relief, Denying a Certificate of Appealability, and Closing Case** |
| v. | |
| Jeremy Bean, | [ECF No. 14] |
|      Respondent | |

Petitioner Xiao Ye Bai brings this counseled habeas corpus action under 28 U.S.C. § 2254 to challenge his 2021 Nevada state-court conviction for attempted unauthorized absence by a prisoner.[1]  In his petition, Bai alleges that his plea was not knowing or voluntary because he entered it due to the ineffective assistance of counsel.[2]  Having evaluated the merits of that claim, I find that habeas relief is not warranted.  So I deny Bai's petition, deny him a certificate of appealability, and close this case.

**Background**

According to a Nevada Department of Corrections (NDOC) disciplinary report, an officer at Southern Desert Correctional Center saw movement outside the prison fence, and following an emergency lockdown, officers found Bai lying on the ground and in need of medical attention.[3] Bai was originally charged with escape, possession or control of a dangerous weapon by an incarcerated person, and manufacturing or possession of items commonly used to escape by a prisoner.[4]  The State amended Bai's charge to attempted unauthorized absence by a prisoner, and Bai pled guilty.[5]  Bai was sentenced to 24 to 60 months to run consecutive to his life-without-

---

[1] ECF No. 18-8.

[2] ECF No. 14.

[3] ECF No. 19-10 at 64.

[4] ECF No. 18-1 at 4–6.

[5] ECF No. 18-5.

the-possibility-of-parole sentence in an unrelated case.[6]  Bai appealed, but the Nevada Supreme Court dismissed the appeal as untimely.[7]

Bai filed a state habeas petition.[8]  The state court held an evidentiary hearing and then denied Bai post-conviction relief.[9]  Bai appealed, and the Nevada Court of Appeals affirmed.[10] Bai filed a federal habeas petition, and the Federal Public Defender moved to be appointed as counsel for Bai.[11]  I granted the Federal Public Defender's motion and set a briefing schedule.[12] Bai filed a counseled amended petition, respondents filed an answer, and Bai filed a reply.[13]

**Discussion**

**A.    Legal standards**

*1.       Review under the Antiterrorism and Effective Death Penalty Act (AEDPA)*

Federal habeas relief is governed by the Antiterrorism and Effective Death Penalty Act, also known as "AEDPA."  If a state court has adjudicated a habeas corpus claim on its merits, a federal district court may grant habeas relief with respect to that claim only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[14]  A state court acts contrary to clearly

---

[6] ECF No. 18-8.

[7] ECF No. 18-24.

[8] ECF No. 18-20.

[9] ECF Nos. 19-14, 19-15.

[10] ECF No. 19-44.

[11] ECF Nos. 1, 5.

[12] ECF No. 7.

[13] ECF Nos. 14, 22, 25.

[14] 28 U.S.C. § 2254(d).  Bai argues that 28 U.S.C. § 2254(d) is unconstitutional.  ECF No. 14 at 5.  Bai acknowledges that the Ninth Circuit has previously rejected a constitutional challenge to 28 U.S.C. § 2254(d).  *See Crater v. Galaza*, 491 F.3d 1119, 1129 (9th Cir. 2007) ("The constitutional foundation of § 2254(d)(1) is solidified by the Supreme Court's repeated application of the statute.").  However, Bai argues that *Crater* is irreconcilable with the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).  ECF No. 14 at 6–14.  In *Loper Bright*, the Supreme Court overruled *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), a case dealing with the deference owed to

2

established federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially indistinguishable facts.[15]  And a state court unreasonably applies clearly established federal law if it engages in an objectively unreasonable application of the correct governing legal rule to the facts at hand.[16]  Section 2254 does not, however, "require state courts to *extend*" Supreme Court precedent "to a new context where it should apply" or "license federal courts to treat the failure to do so as error."[17]  The "objectively unreasonable" standard is difficult to satisfy;[18] "even 'clear error' will not suffice."[19]

The AEDPA bar is high,[20] and federal habeas relief may only be granted if "there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[21]  As "a condition for obtaining habeas relief," a petitioner must show that the state-court decision "was so lacking in justification that there was an error

---

agency interpretations of ambiguous statutes.  603 U.S. at 378–79.  Analogizing *Chevron* deference to AEDPA deference, Bai argues that Congress cannot force Article III courts to abandon their independent judgment and instead defer to a state court's (a non-Article III actor) legal reasoning.  But this court is bound to follow controlling Supreme Court precedent until it has been explicitly overruled by that Court.  *United States v. Werle*, 35 F.4th 1195, 1201 (9th Cir. 2022) (quoting *Nunez-Reyes v. Holder*, 646 F.3d 684, 693 (9th Cir. 2011) (en banc)).  And the Supreme Court did not explicitly (or implicitly) overrule AEDPA deference in *Loper Bright*—in fact, *Loper Bright* did not discuss AEDPA.  *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) ("If a precedent of this Court has direct application in a case, . . . a lower court should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decision.  This is true even if the lower court thinks the precedent is in tension with some other line of decisions." (internal quotation marks and citation omitted)).  Rather, the Supreme Court has recently confirmed AEDPA's constitutionality.  *See Brown v. Davenport*, 596 U.S. 118, 127 (2022) ("When Congress supplies a constitutionally valid rule of decision, federal courts must follow it. In AEDPA, Congress announced such a rule.").  So I reject Bai's constitutionality challenge.

[15] *Price v. Vincent*, 538 U.S. 634, 640 (2003).

[16] *White v. Woodall*, 572 U.S. 415, 424–27 (2014).

[17] *Id*.

[18] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

[19] *Wood v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (citation omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

[20] As the United States Supreme Court acknowledged in *Harrington v. Richter,* 562 U.S. 86, 102 (2011), "If this standard is difficult to meet, that is because it was meant to be."

[21] *Harrington*, 562 U.S. at 102.

well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[22]  "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief under Section 2254(d) is precluded.[23]  AEDPA "thus imposes a 'highly deferential standard for evaluating state-court ruling,' . . . and 'demands that state-court decisions be given the benefit of the doubt.'"[24]

If a federal district court finds that the state court committed an error under § 2254, the district court must then review the claim de novo.[25]  The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief,[26] but state-court factual findings are presumed correct unless rebutted by clear and convincing evidence.[27]

### 2.    *Standard for federal habeas review of an ineffective-assistance claim*

The right to counsel embodied in the Sixth Amendment provides "the right to the effective assistance of counsel."[28]  Counsel can "deprive a defendant of the right to effective assistance[] simply by failing to render 'adequate legal assistance[.]'"[29]  In *Strickland v. Washington*, the United States Supreme Court held that an ineffective-assistance claim requires a petitioner to show that (1) his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all of the circumstances of the particular case;[30] and (2) it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.[31]

---

[22] *Id.* at 103.

[23] *Id.* at 101.

[24] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

[25] *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

[26] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[27] 28 U.S.C. § 2254(e)(1).

[28] *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

[29] *Id*. (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 335–36 (1980)).

[30] *Id*. at 690.

[31] *Id*. at 694.

"A reasonable probability is a probability sufficient to undermine confidence in the outcome."[32]  Any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct so as to avoid the distorting effects of hindsight.[33]  "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practice or most common custom."[34]  The burden is on the petitioner to overcome the presumption that counsel made sound trial-strategy decisions.[35]

When the ineffective-assistance-of-counsel claim is based "[i]n the context of a guilty plea, the ineffectiveness inquiry probes whether the alleged ineffective assistance impinged on the defendant's ability to enter an intelligent, knowing and voluntary plea of guilty."[36]  "To succeed, the defendant must show that counsel's assistance was not within the range of competence demanded of counsel in criminal cases."[37]  And regarding the prejudice prong, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial."[38]

If a state court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult.[39] *Strickland* and § 2254(d) are highly deferential, and when the two apply in tandem, review is doubly so.[40]  "When § 2254(d) applies, the question is not whether counsel's actions were

---

[32] *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000).

[33] *Strickland*, 466 U.S. at 689.

[34] *Richter*, 562 U.S. at 104.

[35] *Id*.

[36] *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004).

[37] *Id.* at 979–80.

[38] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

[39] *See id*. at 104–05.

[40] *Id*. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential.").

reasonable [but] . . . whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."[41]

**B.    Evaluating Bai's federal habeas claim**

Bai alleges that his right to due process under the Fifth and Fourteenth Amendments was violated because his plea was not voluntary, knowing, or intelligent.[42]  Bai claims that he did not understand the consequences of his plea, explaining that he only gave up his right to a trial and pled guilty based on his trial counsel's mistaken promises that this conviction would correct and avoid any disciplinary action from NDOC for an escape attempt.[43]

*1.    Bai's plea and relat4ed proceedings*

Bai faced disciplinary charges from NDOC for attempting to escape.  According to an NDOC disciplinary report, Bai "was advised of the possible statutory good-time loss and the maximum sanctions associated with" his disciplinary charge.[44]  In addition to his administrative charges, Bai also faced criminal charges.

During his criminal arraignment hearing, Bai expressed concern about "continu[ing] to suffer the punishment" from NDOC.[45]  His trial counsel explained that Bai's concern "ha[d] really nothing to do with this Court and nothing to do with the plea."[46]  Rather, Bai's trial counsel explained that he had taken "some extra steps" to "maybe help [Bai] out with the Nevada Department of Corrections" regarding his disciplinary charges, including writing a letter to the NDOC Offender Management Program.[47]  The trial judge asked Bai if he understood "that that's a separate matter from [his] plea," and Bai stated that he understood.[48]  The court canvassed Bai, who, *inter alia*, answered in the negative when asked if "anyone [had] made any promises to

---

[41] *Richter*, 562 U.S. at 105.

[42] ECF No. 14 at 15.

[43] *Id*. at 16.

[44] ECF No. 19-10 at 64–65 (cleaned up).

[45] *Id*. at 71.

[46] *Id*. at 72.

[47] *Id*.

[48] *Id*.

[him] other than what's set forth in the written Guilty Plea Agreement that induced [him] or caused [him] to plead guilty."[49]

After being sentenced, Bai wrote a letter to his trial counsel asking him to file a motion to withdraw his guilty plea because he was "still suffering from . . . segregation detention."[50]  Bai stated that "the only reason that [he] agreed with the relevant Guilty Plea Agreement . . . [was] because [his trial counsel] promised to get [his] relevant [NDOC records] revised."[51]  The state court held an evidentiary hearing on Bai's claims.

At that hearing, Bai's trial counsel testified that "[a]s part of the plea, [Bai] wanted [him] to sign a declaration on some things that [he] would do, including writing letters to the Department of Corrections and to the warden at High Desert State Prison" on Bai's behalf.  After Bai entered his plea, trial counsel "wrote the letters [he] told [Bai he] was going to write" and mailed them.  Trial counsel further testified that the letters "had to do with [Bai's] classifications at the prison," namely requesting that the prison treat the incident as "something other than an escape" to match Bai's plea in his criminal case.  Trial counsel also explained to Bai that, "[i]n the criminal justice system, there are things that [trial counsel] had control of and things that [trial counsel] could negotiate" with the Attorney General, but "when it came to the prison system, [trial counsel] had no power and no control."  Counsel confirmed that he thought Bai "may have thought that [he] or the AG had a little more power with NDOC than [they] actually d[id] and that by simply writing a letter," NDOC would do what he asked.  Counsel believed that Bai "put more faith in these letters than were probably warranted," even though counsel "made [it] very clear to [Bai]" that no specific outcome was promised.[52]

Bai then testified that he was concerned about the prison's discipline of him following the incident because they would classify him "as a high-risk escape prisoner" and he would be automatically transferred to Ely State Prison.  Bai wanted to avoid being transferred to Ely

---

[49] *Id*. at 84.

[50] ECF No. 18-20 at 15.

[51] *Id*. at 16.

[52] ECF No. 19-14 at 9–12.

because he had been attacked there in the past, and his trial counsel "promise[d him]" that, if he plead guilty to the less charge in his criminal case, the prison would "change the institutional record to the same," meaning he would not be "classified as a high-risk prisoner." Bai testified that he did not understand until his post-conviction proceedings that the trial court could not "tell the prison how to classify" him, and he ended up taking the plea offer because his trial counsel said he could "send those powerful letter[s to] change the result" of his NDOC discipline proceedings.[53]

### 2. *State-court habeas proceedings*

In affirming the state court's denial of Bai's state habeas petition, the Nevada Court of Appeals held that Bai failed to demonstrate that his trial counsel's performance was deficient because his trial counsel did not make any promises about the outcome of his NDOC disciplinary proceedings:

> Bai argues the district court erred by denying his claim that his plea was not knowingly and voluntarily entered due to the ineffective assistance of counsel. "A guilty plea entered on advice of counsel may be rendered invalid by showing a manifest injustice through ineffective assistance of counsel. Manifest injustice may also be demonstrated by a failure to adequately inform a defendant of the consequences of his plea." *Rubio v. State,* 124 Nev. 1032, 1039, 194 P.3d 1224, 1228-29 (2008) (footnote and internal quotation marks omitted).
>
> To demonstrate ineffective assistance of counsel sufficient to invalidate a judgment of conviction based on a guilty plea, a petitioner must show counsel's performance was deficient in that it fell below an objective standard of reasonableness and prejudice resulted in that, but for counsel's errors, there is a reasonable probability petitioner would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 58-59 (1985); *Kirksey v. State,* 112 Nev. 980, 987-88, 923 P.2d 1102, 1107 (1996). Both components of the inquiry must be shown, *Strickland v. Washington,* 466 U.S. 668, 687 (1984), and the petitioner must demonstrate the underlying facts by a preponderance of the evidence, *Means v. State,* 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004). We give deference to the district court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law

---

[53] *Id*. at 16, 18–19 (cleaned up).

to those facts de novo. *Lader v. Warden,* 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

Bai claimed he pleaded guilty in order to reduce his charge of escape, which he believed would affect his disciplinary proceedings in prison and reduce his prison classification. Bai jumped over a wall of the prison. The Nevada Department of Corrections (NDOC) disciplined him for escape, and he was criminally charged with escape as well as other charges not relevant to our decision. Bai pleaded guilty to attempted unauthorized absence by a prisoner because he believed that by pleading guilty to a lesser charge, his disciplinary finding of guilt of escape would also be reduced to a lower disciplinary charge. He claimed that counsel failed to explain to him that his pleading guilty would not affect his disciplinary proceedings. Bai also claimed counsel affirmatively misled him in this regard.

Counsel's failure to inform a defendant about collateral consequences of a guilty plea generally does not constitute ineffective assistance of counsel sufficient to invalidate that plea. *Rubio,* 124 Nev. at 1040, 194 P.3d at 1230. However, an affirmative misrepresentation of a collateral consequence may constitute ineffective assistance of counsel and grounds to withdraw the plea. *See id.* at 1043, 194 P.3d at 1232.

The parties do not dispute that Bai's concern regarding the effect of his conviction on his prison disciplinary proceedings would be a collateral consequence of the conviction. Further, the district court did not find that counsel affirmatively misrepresented the collateral consequence. Instead, after holding an evidentiary hearing, the district court found that counsel discussed the differences between criminal proceedings and administrative disciplinary proceedings and counsel did not promise any specific outcome with respect to the disciplinary proceedings. These findings are supported by the record. At the evidentiary hearing, counsel testified he agreed to send a letter to the prison on Bai's behalf but explained to him that he had no power over NDOC and their administrative disciplinary proceedings. Counsel also testified he did not promise Bai any specific outcome in regard to the letter. Thus, Bai failed to demonstrate by a preponderance of the evidence that counsel affirmatively misrepresented a collateral consequence and, therefore, failed to demonstrate counsel's performance was deficient.[54]

### 3.   *The applicable standard of review is not de novo.*

Bai contends that the Court should review this ground de novo because the Nevada Court of Appeals' decision was based on an unreasonable application of clearly established federal law because it required him to prove that his trial counsel affirmatively misrepresented the collateral

---

[54] ECF No. 19-44 at 2–4.

9

consequences of the plea.[55]  Bai contends that this requirement violates *Padilla v. Kentucky*[56] in which the Supreme Court explicitly rejected a proposed rule that *Strickland* only applies when attorneys provide affirmative misadvise.[57]  Bai reads *Padilla* too broadly.  In *Padilla*, the Supreme Court narrowly held that the Sixth Amendment requires defense counsel to advise a client whether a guilty plea carries a risk of deportation.[58]  Indeed, the Supreme Court specifically did not consider whether the "distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' [is] required under *Strickland*" because *Padilla* concerned "the unique nature of deportation."[59]

Bai then argues that the Court should review this ground de novo because the Nevada Court of Appeals' decision was based on an unreasonable determination of the facts.[60] According to Bai, the following facts were unreasonable: Bai's trial counsel informed him that he had no power over NDOC and their administrative disciplinary proceedings and did not promise Bai any specific outcome regarding the letter.[61]  Regardless of whether Bai properly understood this information, these facts were reasonably determined because they were garnered directly from Bai's trial counsel's post-conviction evidentiary hearing testimony.   So I conclude that de novo review is not appropriate.

### 4.    Bai has not met the standard to obtain federal habeas relief.

The Nevada Court of Appeals reasonably determined that Bai's trial counsel discussed the differences between his criminal proceedings and his administrative disciplinary proceedings and did not promise any specific outcome with respect to the disciplinary proceedings.  As the Nevada Court of Appeals reasonably noted, Bai's trial counsel testified at the post-conviction evidentiary hearing that he agreed to send a letter to NDOC and prison on Bai's behalf,

---

[55] ECF No. 25 at 5.

[56] *Padilla v. Kentucky*, 559 U.S. 356 (2010).

[57] ECF No. 25 at 5.

[58] *Padilla*, 559 U.S. at 374.

[59] *Id*. at 365.

[60] ECF No. 25 at 6.

[61] *Id*.

explaining that Bai had pled guilty in his criminal case to a lesser offense than escape. Importantly, Bai's trial counsel also testified that he made no promises to Bai that writing and sending these letters would accomplish anything and told Bai that he had no power over NDOC or the prison regarding Bai's administrative disciplinary proceedings.

Bai disputes the accuracy of this testimony, contending that his trial counsel either misled him or failed to correct his belief about the consequences of his plea.[62]  However, Bai's contention is supported only by his own self-serving post-conviction evidentiary hearing testimony.[63]  The arraignment hearing record supports Bai's trial counsel's version of events: Bai expressed his concern about his NDOC disciplinary proceedings, Bai's trial counsel stated that he had promised to write letters on Bai's behalf to *maybe* help in that regard, Bai confirmed that he understood that the writing of these letters was separate from his plea, and Bai verified that he had not been promised anything outside of his guilty plea agreement that induced him to plead guilty.[64]  These representations by Bai and his trial counsel during the arraignment "carry a strong presumption of verity."[65]

Because Bai has not shown that his trial counsel's representation fell below an objective standard of reasonableness, the Nevada Court of Appeals' determination that Bai's trial counsel was not deficient constitutes an objectively reasonable application of *Strickland*'s performance prong.  Bai is thus not entitled to federal habeas relief.

**C.    A certificate of appealability is denied.**

The right to appeal from the district court's denial of a federal habeas petition requires a certificate of appealability.  To obtain that certificate, the petitioner must make a "substantial

---

[62] ECF No. 25 at 6.

[63] *See, e.g., Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting a petitioner's claim, in part, because "[o]ther than [the petitioner]'s own self-serving statement, there [was] no evidence" to support his allegations); *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) (explaining that the petitioner's "self-serving statement, made years later," was insufficient to support the petitioner's claim).

[64] *See* ECF No. 19-10.

[65] *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

11

showing of the denial of a constitutional right."[66]  If the "district court has rejected the constitutional claims on the merits," that showing "is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[67]  Applying these standards, I find that a certificate of appealability is unwarranted.

**Conclusion**[68]

IT IS THEREFORE ORDERED that the petition **[ECF No. 14] is DENIED**.

IT IS FURTHER ORDERED that a **certificate of appealability is DENIED.**

The Clerk of Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.

Dated: January 28, 2026

_____
U.S. District Judge Jennifer A. Dorsey

---

[66] 28 U.S.C. § 2253(c).

[67] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

[68] Bai requests that this court hold an evidentiary hearing.  ECF No. 14 at 22.  I deny this request because Bai was already granted a thorough evidentiary hearing during his state post-conviction proceedings and this court is precluded from considering any evidence that was not before the Nevada Court of Appeals at the time it considered Bai's claim, making an evidentiary hearing futile.  *See Pinholster*, 563 U.S. at 181.  Plus, I find that further factual development would not affect my reasons for denying relief.  *See Schriro*, 550 U.S. at 474.